**In re COMBUSTION, INC.**

**Action No. 94MDL4000.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Jan. 5, 1995.

Calvin Fayard, plaintiffs' Steering Committee, Denham Springs, LA.

Thomas McNamara, defendants' Steering Committee, Liskow & Lewis, Lafayette, LA; and Charles Seabolt, McDermott, Inc., New Orleans, LA.

*PARTIAL MEMORANDUM RULING*[1]

TYNES, United States Magistrate Judge.

Pending discovery motions raise numerous issues related to the application and interpretation of various privileges and doctrines, including the attorney-client and joint defense privileges and the work product doctrine. The threshold issue which must be determined before these various issues can be analyzed individually is whether state or federal law governs. This issue is addressed independent of the remaining issues raised in plaintiffs' discovery motions.

In general terms, this class action, toxic tort litigation involves the damage claims filed by the original plaintiffs in state court, which raise issues of state law; the third party tort indemnity claims, which raise issues of state law; the third party federal tort claim indemnity issues, which raise issues of federal law; and finally, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. 9601, *et seq.* (1987) claims, which raise issues of federal law. The question of whether state or federal privilege law applies in this case is determined by Fed.R.Evid. 501 and interpretive jurisprudence.

Fed.R.Evid. 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political sub-

1. This partial ruling addresses one significant issue raised in the motions filed by the plaintiffs docketed as Official Documents 926 and 965. The remaining issues will be resolved by separate ruling.

division thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. **However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness,** person, government, State, or political subdivision thereof **shall be determined in accordance with State law.** (emphasis added).

The Plaintiffs' Steering Committee ("PSC") contends that state law governs all privilege issues, citing Fed.R.Evid. 501. The Defendants' Steering Committee ("DSC") states, on the other hand, that the issue is a "red herring" inasmuch as it is "well settled that federal law governs the work product doctrine in federal courts" and inasmuch as Louisiana statutory law and federal common law both expressly recognize the joint defense privilege.

While the issue of which law controls the work product doctrine is not actually well settled, a significant number of trial courts across the country have held that federal law, i.e. F.R.Civ.P. 26(b)(3) and interpretive jurisprudence, governs the application of the work product doctrine. See *Shipes v. BIC Corp.*, 154 F.R.D. 301, 305 n. 2 (M.D.Ga. 1994); *EDO Corp. v. Newark Ins. Co.*, 145 F.R.D. 18, 21 (D.Conn.1992); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 658 (S.D.Ind.1991); *Auto-Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D.Fla. 1990); *Fine v. Facet Aerospace Prods. Co.*, 133 F.R.D. 439 (S.D.N.Y.1990); *Airheart v. Chicago and North Western Transp. Co.*, 128 F.R.D. 669, 670 (D.S.D.1989); *Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198 (M.D.N.C.1988); *Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators, Inc.*, 97 F.R.D. 37 (E.D.N.Y.1983).

The rationale underlying the conclusion reached by these courts is that the work product doctrine is not a substantive privilege within the meaning of Rule 501; instead, it is a device providing qualified immunity from discovery. In the words of the *Rinaldi* court:

"Work product is not a privilege within the meaning of Rule 501 which protects the sanctity of confidential communications. Rather, it is a tool of judicial administration, borne out of concerns over fairness and convenience and designed to safeguard the adversarial system, but not having an intrinsic value in itself outside the litigation arena." (citations omitted).

123 F.R.D. at 201; see also, 8 C. Wright & A. Miller & R. Marcus, Federal Practice and Procedure Section 2025, at 212 (1970) (work product may be more accurately described as providing an immunity as opposed to a privilege for confidential communications).

■ **I join the courts cited above in holding that the work product doctrine is not a privilege within the meaning of Rule 501. Therefore, federal law provides the decisional framework for all work product issues raised in this litigation.**

I turn now to a discussion of the attorney client and joint defense privileges. As a preliminary matter, the DSC's arguments suggest that a ruling on whether state or federal privilege law applies is unnecessary inasmuch as both Louisiana statutory law and federal common law expressly recognize the joint defense and attorney client privileges. I do not find the DSC's position on this issue persuasive for several reasons.

First, the Louisiana statutory law recognizing the joint defense privilege did not become effective until January 1, 1993. La. C.E. Art. 506 B.(3) (1993). The discovery issues raised by plaintiffs' motions have been pending since 1992 when motions were first filed in state court. Although the DSC contends in its' brief that Article 506 B.(3) merely codified earlier jurisprudence, the DSC cited no jurisprudence to support this statement, and indeed, this Court's computer aided legal research revealed no Louisiana cases directly recognizing the joint defense privilege, either prior or subsequent to La.C.E. Art. 506 B.(3). Thus, the question of whether the joint defense privilege was cognizable under Louisiana law at the relevant time remains open. In addition to questions concerning when the joint defense privilege was first recognized by Louisiana law, and whether Article 506 B. (3) applies retrospectively,

there is the possibility that state courts will interpret and apply the joint defense privilege differently during the future pendency of this litigation than the federal courts have in the past. Finally, there are, more likely than not, nuances between state and federal interpretations of the attorney-client privilege.[2]

For these reasons, and in the interests of certainty and order, the question of whether state or federal privilege law governs the interpretation of attorney-client and joint defense privilege issues must be addressed.

■ The language of Rule 501 raises more questions, than it provides answers. In fact, the Senate Judiciary Committee anticipated the uncertainties created by the version of Rule 501 which was enacted. The Notes of Committee On the Judiciary Senate Report No. 93–1277 observe quite accurately that "[t]he formulation adopted by the House is pregnant with litigious mischief." Rule 501, as adopted, provides that federal common law applies to issues of privilege except in civil proceedings "with respect to an element of a claim or defense as to which state law supplies the rule of decision ..."[3] In sum, Rule 501 makes it clear that state privilege law will apply in diversity cases, and that federal privilege law will apply in federal question cases. However, in federal question cases where pendent state law claims have been asserted, the rule is equivocal.

The Senate Committee Notes to Senate Report No. 93–1277 expressly anticipated several of the problems with which the courts have grappled in applying Rule 501, as follows:

"Another problem not entirely avoidable is the complexity or difficulty the Rule introduces into the trial of a federal case containing a combination of federal and state claims and defenses ... two different bodies of privilege law would need to be consulted. It may even develop that the same witness-testimony might be relevant on both counts and privileged as to one but not the other ..." Notes of Committee On the Judiciary, Senate Report No. 93–1277.

Nor does the legislative history shed much light upon congressional intent concerning the problem of conflicting federal and state privilege law. *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1343 n. 13 (5th Cir.Unit A March 1981); *Walker v. Lewis*, 127 F.R.D. 466, 468 (W.D.N.C.1989); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458–59 (N.D.Cal. 1978).

With little guidance from the text of the rule or the legislative history, the courts have decided the issue of conflicting federal and state privilege law for themselves. A number of courts that have confronted the issue in the context of the discoverability of evidence have held that the federal law of privilege governs where the evidence sought is relevant to both federal and state claims. *von Bulow v. von Bulow*, 811 F.2d 136, 140 (2nd Cir.1987); *Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3rd Cir.1982); *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981); *Perrignon v. Bergen Brunswig Corp., supra; Cary v. Soileau*, 125 F.R.D. 432 (W.D.La.1989); *Pinkard v. Johnson*, 118 F.R.D. 517 (M.D.Ala.1987); *First Federal Savings & Loan v. Oppenheim, Appel, Dixon*, 110 F.R.D. 557, 560 (S.D.N.Y. 1986); *Sirmans v. City of South Miami*, 86 F.R.D. 492, 494–95 (S.D.Fla.1980).

The Sixth and Eleventh Circuit Courts of Appeals joined and broadened this trend in 1992 holding in sweeping language that the federal law of privilege governs determination of all privilege issues raised in a federal question case involving pendent state law claims, even where the evidence sought is

**2.** It would be extremely burdensome, if not actually impossible, to conduct a comprehensive evaluation at this point to determine whether any conflicts exist between federal and state interpretations of the attorney-client privilege. Experience leads me to believe that there are nuances, if not actual conflicts, between federal and state interpretations.

**3.** See the following commentators for discussion of the interpretation difficulties created by Rule 501: 23 C. Wright & K. Graham, Federal Practice and Procedure, Section 5434 at 861–864 (1980); 2 J. Weinstein & M. Berger, Weinstein's Evidence, P 501(02) at 501–22 to –23 (1980).

relevant to a pendent state law claim to which a contrary state privilege law would otherwise apply. *Hancock v. Hobbs,* 967 F.2d 462 (11th Cir.1992); *Hancock v. Dodson,* 958 F.2d 1367 (6th Cir.1992). See also, *Puricelli v. Borough of Morrisville,* 136 F.R.D. 393, 396 (E.D.Pa.1991).

Although the Fifth Circuit has never directly addressed the pending issue, it did address a similar issue in *American Civil Liberties Union of Mississippi, Inc. v. Finch.* In *Finch,* the Fifth Circuit held that compelling federal interests in a case arising under 42 U.S.C. § 1983 permitted the federal court to assess the applicability of a claimed state-law privilege independent of the judgment of the Mississippi state legislature and state courts, 638 F.2d at 1343. Presumably, then, *Finch* advises trial courts to balance competing state and federal interests in determining what weight shall be given to state privilege law. In the case at hand, federal question jurisdiction is substantively based on CERCLA and the Federal Tort Claims Act, 28 U.S.C. 1346, both of which invoke exclusive federal jurisdiction. Clearly, federal interests here are strong. Thus, *Finch* seems to provide further support for the application of federal privilege law as well.

Finally, the general policies of the federal rules favoring uniformity and simplicity support the approach taken by the *Hancock* decisions. An approach consistent with the literal language of Rule 501 would dictate that every question posed at a deposition and every written interrogatory or request for production propounded be evaluated to determine whether it sought evidence solely related to state issues, solely related to federal issues, or related to both federal and state issues and then if it appeared that the evidence related to both federal and state issues, under *Finch,* one would then weigh the competing federal and state interests to determine which privilege law would ultimately apply. Such an approach would be unworkable in most cases, and would create chaos in a case of proportions as massive as this one. See *Hancock v. Hobbs,* 967 F.2d at

466; *Wm. T. Thompson Co.,* 671 F.2d at 104 expressly acknowledging the impracticality of such an approach.

■ In accord with the foregoing, I further hold that the federal law of privilege provides the rule of decision with respect to privilege issues affecting the discoverability of evidence in this federal question case involving pendent state law claims.[4]

The Clerk of Court is directed to provide facsimile notice of this partial ruling to all liaison counsel.

---

4. The deadline for appeal of this partial ruling is **January 16, 1995.** (U.L.L.R. 19.09W allows the Court to modify the time period for appeal).