**Jason ROMAN, Appellant,**

v.

**CITY OF READING; Reading Police Department.**

No. 04–2076.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 24, 2005.

Decided Feb. 11, 2005.

W. Thomas Anthony, Jr., Bethlehem, PA, for Appellant.

David J. MacMain, Janelle E. Fulton, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Appellees.

Before SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Chief Judge.

At issue is whether the District Court abused its discretion when it dismissed Appellant Jason Roman's claim with preju-

---

dice under Fed.R.Civ.P. 37. We will affirm.

## I.

### A.

The following facts appear to be undisputed. On June 14, 2002, Roman, who is African–American, was driving through Reading late in the evening when several bullets struck his car. Roman drove away from the scene. He subsequently observed police cars a few blocks away at a store, in which several police officers were investigating a robbery. Roman stopped to report the incident. When Roman approached one of the policemen, who was white, the officer instructed Roman to wait in his car where someone would shortly assist him. After waiting fifteen minutes, Roman phoned a friend to call 911 to report the shooting, and when there was no response, Roman himself phoned 911 twice to report the shooting and request assistance.

After approximately forty-five minutes, two police officers inside the store approached Roman and listened to his report of the incident. The interview lasted about fifteen minutes and the officers gave Roman their card and an incident number. The police performed no follow-up investigation.

Roman initiated a § 1983 action *pro se* on July 18, 2002 against Appellees City of Reading and the Reading Police Department. He alleged a substantive due process violation due to the appellees' failure to provide constitutionally sufficient services; he alleged, pursuant to policy or custom, the police treated him differently because of his race in violation of the Equal Protection Clause; and, he alleged the appellees' conduct placed unreasonable restrictions on his constitutional right to travel.

### B.

We now discuss in detail the procedural history, elements of which ultimately served as the basis for dismissing the complaint. Appellees filed a motion to dismiss on September 18, 2002. On October 29, 2002, three weeks after the expiration of the deadline for filing a response to the appellees' motion, Roman sought a thirty-day extension to respond, claiming health problems prevented his ability to respond earlier. The court granted Roman a week, setting the new deadline at December 6, 2002. Roman subsequently missed the deadline, filing a week late on December 13. The court granted the appellees' motion to dismiss as uncontested under Local Rule of Civil Procedure 7.1(c) and dismissed the complaint with leave to file an amended complaint by January 2, 2003. Roman failed to do so.

On January 27, 2003, Roman filed an opposition to appellees' motion to dismiss, which the District Court dismissed as moot. On February 26, 2003, Roman moved to vacate the District Court's Order of December 13, 2002, which had dismissed the complaint. Roman claimed he had never received copies of the order extending the response deadline to December 6, 2002, or the order dismissing the complaint. While remaining *in dubitante* of Roman's excuses for filing late, the District Court nonetheless accepted them as a sufficient basis to vacate its prior order dismissing the complaint. On April 3, 2003, the court issued an order reinstating the complaint and the appellees' motion to dismiss.

On April 21, 2003, the court granted in part and denied in part the appellees' motion to dismiss. The court dismissed Roman's substantive due process claim, but denied the motion with respect to the Equal · Protection and right to travel

claims. The court then set August 15, 2003, as the deadline for discovery and September 15, 2003, as the deadline for dispositive motions.

Roman made no filings during the discovery period. The District Court ordered a status update on September 22, 2003, to which the appellees responded shortly thereafter, explaining that neither party had conducted any discovery and requesting additional time to do so. Roman did not respond to the District Court or the appellees. Not addressing the appellees' request for an extension of discovery, the court directed Roman to file pretrial memoranda by March 9, 2004, set March 25, 2004, as the pretrial conference and April 6, 2004, for the trial pool.

On October 10, 2003, the appellees served on Roman the first set of interrogatories, a request for production of documents and things, and a notice of deposition on November 3, 2003. Roman failed to respond to the interrogatories and document request by the deadline. He also failed to appear for the deposition. In a letter to defense counsel, Roman explained that he mistakenly believed the deposition was scheduled for December 3, 2003, and asked defense counsel to contact his newly retained attorney, W. Thomas Anthony, Jr. On November 17, 2003, appellees sent a letter to Mr. Anthony again posing their interrogatory and document request and enclosed a second notice of deposition for November 17, 2003. On November 14, 2003, Mr. Anthony notified defense counsel that he could not attend the deposition, but that he was available on December 3, 2003. In response, the appellees served a third notice of deposition for that date and asked again for responses to the interrogatories, document request, and Roman's Rule 26(a)(1) initial disclosures.

The deposition took place on December 3, 2003. At the end of the deposition, Mr. Anthony stated on the record, in Roman's presence, that he would provide the information requested in the interrogatories and document request.

On December 30, 2003, the appellees sent a letter to Roman stating that the discovery responses and initial disclosures were past due and also requested that Roman complete a form authorizing access to his medical records. Roman did not respond to this letter or provide the information requested.

On January 15, 2004, the appellees filed a motion for an extension to complete discovery, which the District Court granted through February 13, 2004, and a motion to compel Roman's discovery responses, to which the court set a motions deadline for February 23, 2004. The District Court stated that it "carefully chose these dates to ensure that it would have an adequate period of time in which to consider and decide any dispositive motions in advance of the ... pretrial conference." Record at 15a. Roman failed to respond to the motion to compel. On February 3, 2004, the District Court granted the appellees' motion as uncontested and ordered Roman to serve all his discovery responses before the close of discovery.[1] Roman again failed to meet the deadline. On March 8, 2004, however, Roman filed his Rule 26(a) initial disclosures, an answer to the document request, answers to the interrogatories, a motion for extension of time to file opposition to the appellees' motion for summary judgment, an answer to the appellees' motion to dismiss, and Mr. Anthony's entry of appearance.

---

1. The District Court noted in its memorandum dismissing the complaint that "the Court explicitly reiterated the discovery and motions deadlines and advised Plaintiff's counsel to 'comply strictly with all relevant deadlines.' "

On March 22, 2004, the District Court dismissed with prejudice Roman's complaint pursuant to Fed.R.Civ.P. 37.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review a decision to dismiss a complaint with prejudice under Fed.R.Civ.P. 37 for abuse of discretion. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir.1984).

## III.

### A. Applicable Law

Under Fed.R.Civ.P. 37, a district court may impose sanctions on a party that fails to make the required Fed.R.Civ.P. 26(a) initial disclosures or to comply with an order compelling discovery, including responding to interrogatories or document request. Where "a party ... fails to obey an order to provide or permit discovery," a district court may make orders "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]"

We have noted that "the sanction of dismissal is disfavored absent the most egregious circumstances." *U.S. v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161 (3d Cir.2003) (citing *Poulis*, 747 F.2d at 867–68). In determining whether the severe sanction of dismissal is justified, a district court must weigh six factors:

(1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis in original). We review the way in which the District Court balanced these factors for abuse of discretion. *See, e.g., Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 692 (3d Cir.1988). A district court need not find every factor satisfied to warrant dismissal. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir.1988). When a district court has doubt, the decision whether to dismiss "should be resolved in favor of reaching a decision on the merits" and "alternative sanctions should be used." *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir.1984).

### B. Application of the Poulis Factors

#### 1. Extent of Roman's Personal Responsibility

The District Court found that this factor weighed only "slightly" in favor of dismissal because Mr. Anthony bore much of the responsibility.[2] The District Court noted that Roman did have some personal responsibility, citing the deposition on December 3, 2003, where defense counsel addressed Roman himself regarding his obligation to answer the interrogatories and document request. In addition, there is merit in appellees' argument that Roman was solely responsible for his conduct at

**2.** Roman's brief represents that "the failure to respond to discovery was entirely the fault of the Plaintiff's attorney[.]"

the times in which he proceeded *pro se* (at least until November 2003), in which he failed to meet several discovery deadlines. The District Court did not abuse its discretion in consideration of this factor.

### 2. Prejudice to Appellees Caused by Failure to Respond to Discovery

The District Court found the prejudice caused to appellees by Roman's failure to respond to discovery "weigh[ed] heavily in favor of dismissal." Record at 21a. Specifically, the court concluded that appellees' ability to prepare was effectively impeded by Roman's failure to respond to the interrogatories, document request, as well as failure to produce the Rule 26(a) initial disclosures.

Roman makes two arguments that the District Court abused its discretion. First, Roman argues that appellees suffered no prejudice because his deposition provided the information the appellees' sought in their interrogatories and document request. We find this argument unavailing. *See Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D.Pa.1992) ("The general rule is that answers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions, or other documents.") (citing 4 James Wm. Moore *et al.*, Moore's Federal Practice (2d ed.1989) ¶ 33.25[1]). To satisfy this *Poulis* factor, "prejudice" does not mean "irremediable harm," but instead, the burden imposed by impeding a party's ability to prepare effectively a full

and complete trial strategy. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir.2003). Even if the deposition could stand in the shoes of properly answered interrogatories, document request, and initial disclosures, Roman's answers at his deposition, especially regarding the evidence he would proffer at trial, were incomplete and unsatisfactory.[3]

Second, Roman argues that "it is obvious from the docket entries that the trial would never have been able to be held on the scheduled date," and the District Court "would have had no choice but to continue the trial date, and that continuance would have eliminated any possibility of prejudice to the Defendants." Appellant's Br. at 16. To the contrary, the District Court noted that it "rejected Defendants' proposed deadlines so as to preserve the existing dates for the pretrial conference ... and trial pool ... which could not be rescheduled in light of the Court's busy docket.... The Court carefully chose these dates to ensure that it would have an adequate period of time in which to consider and decide any dispositive motions in advance of the March 24, 2004 pretrial conference." Record at 15a. Thus, the delay in responding to the interrogatories and document request was prejudicial because it would have left appellees little time to prepare.

### 3. History of Dilatoriness

The District Court found that Roman's "history of dilatoriness is long, bedeviling

---

**3.** Two examples demonstrate why the deposition, by itself, hindered appellees' efforts to build a legal and strategic defense. First, at the deposition on December 3, 2003, defense counsel asked Roman to identify the evidentiary basis for his claim that the appellees have a policy of racial inequality. Roman responded that he could establish his case simply by producing (unspecified) articles from the local newspaper and suggested he could make his case if he inquired about police department regulations. Record at

179a. Roman never did so. If Roman had presented such evidence at trial, the appellees would not have had advance opportunity to examine it and develop counter evidence. Record at 19a. As a second example, Roman noted in his filing of March 8, 2003, that he intended to present a report from Dr. David Daley and that he could offer Dr. Daley as a "possible expert witness." But, as the District Court noted, Roman did not comply with the Federal Rules governing expert witnesses.

and inconsistent with the efficient administration of justice ... weigh[ing] heavily in favor of dismissal." Record at 20a–21a. This case's procedural history bears out the District Court's conclusion: Roman took nearly twenty months from bringing his complaint to filing his Rule 26(a) initial disclosures; he requested an extension of time to respond to appellees' motion to dismiss, but did not meet the deadline; after the court vacated its order of dismissal, Roman conducted no discovery during the four-month discovery period; Roman subsequently failed to comply with the court's order requiring a status update; he failed twice to attend a scheduled deposition; he failed to respond to appellees' written discovery, despite repeated requests; he did not respond to appellees' motion to compel and did not provide answers during the court-ordered discovery period; and, he did not file a timely response to the appellees' motion for summary judgment. Even when he finally submitted the requested discovery and motions, well after the respective deadlines, he requested more time for discovery, stating he would need more time to gather evidence. In light of this extensive history of dilatoriness, we find no abuse of discretion in the weighing of this factor.

### 4. Whether the Conduct of the Party or the Attorney was Willful or in Bad Faith

The District Court found this factor favored dismissal. Record at 23a. In particular, the court suggested that Roman and Mr. Anthony's failure to "offer any substantiated, adequate excuses for their shortcomings" for the "sheer quantity" of dilatory conduct was particularly "telling" of bad faith.

Absence of reasonable excuses may suggest that the conduct was willful or in bad faith. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir.2003). In the face of court-imposed deadlines, repeated failure to observe court imposed deadlines and total failure to pursue a claim beyond the pleadings may constitute willful conduct. *See Wade v. Wooten*, 1993 WL 298715, at *4 (E.D.Pa. July 30, 1993) (evaluating the fourth *Poulis* factor and holding that "[plaintiff] must be held accountable for his willful failure to pursue his claim beyond the mere pleadings despite being given ample opportunity to comply with this Court's Orders and to respond to defendants' motions").

### 5. Effectiveness of Sanctions other than Dismissal

The District Court found this factor favored dismissal because no satisfactory alternative sanctions were available. The court carefully considered each alternative sanction and gave adequate reasons why it was not sufficient.[4]

### 6. The Meritoriousness of the Claim

The District Court found this factor favored dismissal. With respect to the

---

4. The District Court considered several alternative sanctions. The court found inadequate an order precluding Roman from presenting certain evidence—he had produced little evidence to preclude and such an order would not have helped appellees' need for an outline of Roman's case. The court found lacking an order forbidding Roman from conducting further discovery—it would have equated to dismissal given Roman's failure to conduct discovery of his own. The court rejected assessing attorneys' fees and costs against Roman or Mr. Anthony because this would not have redressed appellees' need for an outline of Roman's evidentiary case. The court decided not to grant Roman's motion for an extension of time and continue the trial date—there had already been too much delay. Finally, the court rejected the possibility of deciding the case on a motion for summary judgment because the record was so incomplete.

Equal Protection claim, the court found such a claim could be actionable if one ignored the lack of evidentiary support in this particular case. With respect to the interstate travel claim, the court found it lacked merit because "no court has recognized government *inaction* as the basis for such a claim." Record at 25a (emphasis in original). The court observed that "the constitutional right to travel flows from the Due Process Clause" and "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Record at 25a (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).

Roman argues that the District Court's finding that the interstate travel claim lacked merit was inconsistent with its earlier ruling that the same claim survived a Rule 12(b)(6) motion to dismiss. Under Rule 12(b)(6), a court should only dismiss if no relief can be granted under any set of facts which could be proved. Often, a trial judge rejects a defendant's motion to dismiss for failure to state a claim to allow the plaintiff time to develop evidence through discovery. Almost a year passed between the District Court's rejection of the Rule 12(b)(6) motion and its dismissal of the claim as sanctions under Rule 37. In that time, the District Court observed the results of Roman's deposition as well as his failure to engage in his own discovery. If there were a conceivable (but extraordinary) set of facts under which relief could be granted, the District Court had seen enough to find that they were not present in this case. Thus, we find no abuse of discretion.

We find no abuse of discretion in the District Court's ultimate conclusion that the weight of all the *Poulis* factors justify the sanction imposed. For the reasons stated, we believe the court thoroughly examined Roman's arguments, carefully weighed the *Poulis* factors, and reasonably concluded that the dismissal was warranted. Therefore, we will affirm.